# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARY JO ELLEN HOEFT,

        Plaintiff,

        -vs-                          Case No. 08-C-0118

MAURY STRAUB, DR. PEREZ, LAURIE WILLIAMS,
OZAUKEE COUNTY, and UNKNOWN JOHN DOES,

        Defendants.

## DECISION AND ORDER

The plaintiff, Mary Jo Ellen Hoeft, is a state prisoner who is proceeding *pro se* in this action under 42 U.S.C. § 1983. She was allowed to proceed on: (1) an Eighth and Fourteenth Amendment claim against defendant Nurse Laurie Williams and unknown John Does regarding the medical care she received at the Ozaukee County Jail in 2007; and (2) Eighth and Fourteenth Amendment claims against defendants Sheriff Maury Straub, Dr. Celestino Perez, and Ozaukee County for maintaining a custom, policy, or practice of not providing adequate healthcare and attention for inmates under their control with Methacillin Resistant Staphylococcus Aureus (MRSA), and for failing to properly train Williams and the unknown John Does in providing adequate medical care. The defendants have filed motions for summary judgment, which are now before the court.

# I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

The plaintiff was incarcerated at the Ozaukee County Jail from February 21, 2007, to June 13, 2007. During that time, she contracted Methacillin Resistant Staphylococcus Aureus (MRSA), which was diagnosed and treated after she arrived at Taycheedah Correctional Institution.

Defendant Maury Straub is the Ozaukee County Sheriff and is responsible for running the Ozaukee County Jail. Defendant Dr. Celestino Perez is an internist in private practice who also provides jail doctor services at the Ozaukee County Jail. Defendant Nurse Laurie Williams is a member of the medical staff at the Ozaukee County Jail.[2]

On March 1, 2007, the plaintiff submitted a medical request complaining of vaginal discharge, cramps, and itching. She was seen by Nurse Williams on March 2, 2007, and a urine sample was collected to test for sexually transmitted diseases (STD). On March 5, 2007, Nurse Williams informed the plaintiff that the test was negative for any STD. Also on March 5, the plaintiff submitted a medical request complaining of ongoing discharge. The plaintiff indicated that she was miserable and irritated and that the problem had been going

---

[1] The Facts are taken from the proposed findings of fact submitted by the plaintiff and the defendants, as well as the underlying affidavits and exhibits. The court has reviewed the documents submitted by the plaintiff after the defendants' reply and notes that the plaintiff did not ask for leave of the court to file additional materials. The court will not strike the materials, but they will not bear directly on the court's decision because they are not relevant to the material questions in this case. First, the Department of Corrections policy regarding MRSA is not applicable to Ozaukee County and its Jail, and the plaintiff was not diagnosed with MRSA until she arrived at Taycheedah. While in the custody of Ozaukee County, she was diagnosed with and treated for a regular staph infection. Second, the affidavits of fellow inmates simply elaborate on the plaintiff's descriptions of her wounds and illness.

[2] The John Doe defendant (or defendants) has not been identified or served with the plaintiff's third amended complaint. Therefore, they are not parties and are dismissed from this action.

on since February 21. In response to plaintiff's request, Nurse Williams prescribed the antibiotic diflucan. The plaintiff began receiving the medication on March 8.

On March 8, 2007, the plaintiff wrote a note to medical indicating that she took the diflucan but she still had a lot of discharge. She requested a test for a vaginal bacterial infection. When she had not been seen, the plaintiff filed an inmate grievance on March 11. Nurse Williams responded on March 12 that the plaintiff had been scheduled for an off-site appointment with a gynecologist. Nurse Williams also saw the plaintiff in the jail observation tank on March 12. At that time, the plaintiff informed Nurse Williams that she had gonorrhea in which the discharge went from yellow to green and that she was having abdominal pain and that a knot was developing under her left armpit. Nurse Williams gave the plaintiff Tylenol, reassured her that she was scheduled for an off-site appointment, and told the plaintiff to show the knot to the doctor. Nurse Williams did not consult with Dr. Perez on March 12 about the knot developing under the plaintiff's armpit.

Nurse Williams examined the plaintiff on March 13 regarding the plaintiff's concerns about contracting a STD and her complaint regarding psoriasis. Nurse Williams advised the plaintiff that further testing needed to be done at the plaintiff's off-site appointment. On March 14, the plaintiff received a prescription for ciprofloxacin, an antibiotic for treating bacterial infections.

The plaintiff was seen on March 20, 2007, by Dr. Indira Mammen, an ob/gyn in private practice, for evaluation of the plaintiff's complaints regarding vaginal discharge.

At that time, Dr. Mammen was unable to examine the plaintiff because she was menstruating. However, Dr. Mammen did diagnose the plaintiff with a "staph infection" with cellulitis in the left axilla. Dr. Mammen advised the plaintiff to apply moist heat to the area two to three times daily. That same day, Dr. Perez and Nurse Williams ordered triamcinalone cream (for psoriasis) and t/gel shampoo for the plaintiff.

On March 21, 2007, Nurse Williams rescheduled the plaintiff's appointment with Dr. Mammen and also saw the plaintiff in the examination room. The plaintiff complained that the boil hurt badly and asked Nurse Williams if she thought the plaintiff should have it lanced. The plaintiff also informed Nurse Williams that she had been using kotex pads as compresses for the boil. Nurse Williams consulted with Dr. Perez regarding the boil, which measured approximately one inch by one half inch. Per Dr. Perez's protocol, the plaintiff was given duricef and cefradroxil.

The plaintiff was seen again by Dr. Mammen on March 27, 2007. Dr. Mammen ordered a culture that confirmed that the plaintiff had a STD, not a yeast infection. Dr. Mammen prescribed an antibiotic called metronidazale.

The plaintiff advised medical on April 6, 2007, that the first boil had burst and that another one had developed. On April 9, 2007, Nurse Williams issue the plaintiff another prescription of duricef. Nurse Williams saw the plaintiff on April 10, 2007, regarding the second boil that had started draining the night before. Nurse Williams did not collect any cultures from the draining boil, but she issued band-aids to cover the boil. The plaintiff saw

Nurse Williams again on April 24, 2007, and the nurse noted that the boil had left a scar on the plaintiff's left axilla.

On May 6, 2007, the plaintiff informed deputy William Nemacheck that she had developed what appeared to be a "spider bite" on the left side of her body. The deputy called Nurse Williams and told her that he saw a small mark under the plaintiff's arm. Nurse Williams asked whether the area appeared red, infected, or swollen, and the deputy responded that the mark did not seem to be infected. Nurse Williams told the deputy to tell the plaintiff to put in a medical request. The plaintiff submitted her request on May 7, 2007. In her request, the plaintiff notes that the bite has tripled in size and is very uncomfortable.

The plaintiff was seen by Nurse Williams on May 9, 2007, and the nurse assessed a red swollen area on the plaintiff's chest with a black spot in the center, and the area was draining. Once again, Nurse Williams did not collect a culture from the draining boil, but she reissued another prescription for duricef. The next day, the plaintiff submitted a request for health care that read:

> This thing is draining constantly and not looking good at all. NEED MORE Band Aids or medical tape ASAP. You can check this BIO HAZARD bag if you like. Also, I think I should be using some kind of surgical scrub soap to be cleaning this thing out. My wound is to [sic] deep and these women in [here] are questionable with their own open soars [sic] and bumps. I don't want to catch a [sic] infection on top of a [sic] infection.

(Affidavit of James Johnson, Exhibit FF). The plaintiff was seen the same day, and she received more band-aids.

6

On May 11, 2007, an argument broke out in the dormitory because some women openly expressed their concerns about several other women, including the plaintiff, with boils on their bodies. Deputy Craney said that what the plaintiff had was not contagious and urged everyone to calm down. The plaintiff asked to be removed from the dorm for a while so everyone could cool down.

The plaintiff submitted another medical request on May 29, 2007, reporting that a new boil was developing under her right arm. The plaintiff was examined by Nurse Williams the same day, and the nurse confirmed the boil. Nurse Williams advised the plaintiff to monitor the area under her arm and said she would consult with Dr. Perez.

On June 2, 2007, the plaintiff told a deputy that she had a staph infection and needed to be seen as soon as possible. The deputy called Nurse Williams and relayed the message, but Nurse Williams advised the plaintiff that she did not have time to see the plaintiff and instructed the deputy to move the plaintiff to the holding cell until she could be seen. Because the plaintiff considered the holding tank no different than segregation, she informed the deputy that she did not want to be moved. The plaintiff was seen by Nurse Williams later that day. The plaintiff reported that she could not take the noise and constant bickering in the dormitory. At this examination, Nurse Williams noted that the plaintiff was constantly pacing and made observations regarding tiny red spots and marks that did not appear to be boils. Nurse Williams provided the plaintiff with treatment directions, a towel, and sponges.

On June 4, 2007, the plaintiff submitted a medical request reporting that she had developed three more boils under her right arm. The plaintiff requested supplies for when they ruptured and expressed that she was in extreme pain. The plaintiff also requested surgical soap.

Nurse Williams saw the plaintiff on June 5. The plaintiff complained that it was sore now that she had three boils and asked why she kept getting them. She indicated that the dormitory was unclean, that all the razors are stored together and that the plaintiff's towel does not get dry enough in between uses. Nurse Williams' assessment was recurring boils, and she told the plaintiff that she would consult with Dr. Perez. Nurse Williams also issued ibuprofen for the pain and discomfort and started the plaintiff on another course of duricef.

On June 11, 2007, the plaintiff complained to a deputy that she had a fever and draining boils. Nurse Williams saw the plaintiff, issued her Tylenol for the pain, and advised her to continue using the antibiotic. The plaintiff was transferred to Taycheedah two days later.

### III. DISCUSSION

**A. Medical Care Claim**

The defendants argue that they are entitled to summary judgment because the plaintiff was provided with prompt and continuous medical treatment by a highly trained nurse who was following the Ozaukee County Jail protocols for medical care. The plaintiff

8

contends that the medical treatment she received showed deliberate indifference to the possibility that her condition was MRSA.

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008), the court set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts. *Id.* And although deliberate means more than negligent, it is something less than purposeful. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The point between these two poles lies where "the official knows of and disregards an excessive risk to inmate health or safety" or where "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draw[s] the inference." *Id.* at 837, 114 S.Ct. 1970. A jury can "infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

The defendants do not argue that the plaintiff was without a serious medical need. Thus, the court has only to consider whether defendant Williams was deliberately

9

indifferent to that need.[3]

The plaintiff argues that the failure to diagnose her with and treat her for MRSA resulted in a long period of extreme physical and mental pain and suffering and even a risk of death. She contends that Williams knew or should have known that she was a MRSA suspect case, and that a culture should have been done in order to diagnose MRSA and to make the right choice of antibiotic to treat it.

Dr. Mammen diagnosed the plaintiff with a staph infection on March 20, 2007. The plaintiff was treated for that infection, according to the Ozaukee County Jail's protocols, until her transfer to Taycheedah on June 13. Each time the plaintiff submitted a request for medical services, she was seen promptly and provided with medication to treat her condition. The plaintiff was prescribed four courses of antibiotics for her infection, and she also was given instructions and supplies for cleaning her boils (gauze pads, band aids, antibacterial soap, and sponges). The failure to do a culture of the drainage and identify this particular infection as MRSA rather than a regular staph infection may have constituted negligence, but the facts in this record do not show that Nurse Williams was deliberately indifferent to the plaintiff's serious medical needs.

## B. Official Capacity Claims

The plaintiff was allowed to proceed on Eighth and Fourteenth Amendment

---

[3] The plaintiff includes Dr. Perez in her arguments regarding this claim. However, she did not allege his personal involvement in her Third Amended Complaint and was not allowed to proceed on a medical care claim against him.

claims against defendants Sheriff Maury Straub, Dr. Celestino Perez, and Ozaukee County for maintaining a custom, policy, or practice of not providing adequate healthcare and attention for inmates under their control with MRSA, and for failing to properly train Williams and the unknown John Does in providing adequate medical care, which led to the plaintiff not receiving adequate health care while under their control.[4] The defendants submit that they are entitled to summary judgment on these claims.

The plaintiff maintains that Ozaukee County (and the other defendants in their official capacities) violated her constitutional rights by not having a MRSA policy. However, the lack of a specific MRSA policy does not automatically mean deliberate indifference. To hold a defendant municipality liable under Section 1983, the plaintiff must demonstrate the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers." *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690 (1978). There must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

In this context, to demonstrate that Ozaukee County and the other defendants in their official capacities are liable for a harmful custom or practice, the plaintiff must show that County policymakers were "deliberately indifferent as to [the] known or obvious

---

[4] Both parties include in their summary judgment briefs arguments about a claim that the conditions of confinement at the Ozaukee County Jail caused the plaintiff to contract MRSA. However, such a claim was not set forth in the plaintiff's Third Amended Complaint and is not part of this case.

11

consequences." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* "Therefore, in situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable." *Thomas*, 604 F.3d at 303.

The court of appeals for this circuit has not adopted any bright-line rules defining a "widespread custom or practice." *See id.* However, it has stated that "the plaintiff must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or a gap in expressed policies, . . . or "a series of violations to lay the premise of deliberate indifference." *See id.* (citations omitted). The plaintiff has not met her burden of presenting evidence to meet these threshold requirements, as required to overcome summary judgment.

The defendants have produced ample evidence regarding the numerous healthcare related policies in effect at the Ozaukee County Jail during the plaintiff's time there. The plaintiff argues the county had a policy of providing inadequate screening of inmates upon admission to the jail and providing as little as possible medical care to inmate unless death appears imminent. The record belies these allegations. The plaintiff was provided with prompt medical care each time she submitted a medical request. Additionally, she was quickly referred to an off-site gynecologist when she presented with a problem that

12

could not be addressed by Nurse Williams. The plaintiff was housed at the Ozaukee County Jail for less than four months and was seen by Nurse Williams at least twelve times, and by Dr. Mammen twice. Nurse Williams also consulted with Dr. Perez regarding the treatment of the plaintiff. Additionally, the plaintiff was treated with at least six prescription medications during that time. This is far from as little care as possible.

Additionally, there are limited circumstances when "failure to train" may be a basis for municipal liability under § 1983. *City of Canton*, 389 U.S. at 388. However, inadequacy of training may only serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to rights of persons with whom the county employees come in contact. *Id.* The plaintiff does not make arguments regarding her failure to train claim. Therefore, she has abandoned this claim, and the defendants are entitled to summary judgment on it. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented to the district court in response to summary judgment motions are waived).

## V. ORDER

**IT IS THEREFORE ORDERED** that the motion for summary judgment filed by defendants John Doe, Ozaukee County, Maury Straub, and Laurie Williams is **GRANTED** (Docket #120);

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendant Dr. Perez is **GRANTED** (Docket #124);

**IT IS ALSO ORDERED** the Defendants may recover the costs of this action;

The unknown John Doe defendants are **DISMISSED;**

**IT IS ALSO ORDERED** that this action is **DISMISSED**; and

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment granting the defendants' motions for summary judgment **DISMISSING** the plaintiff's Eighth and Fourteenth Amendment claims against defendant Nurse Laurie Williams regarding the medical care she received at the Ozaukee County Jail in 2007; and her Eighth and Fourteenth Amendment claims against defendants Sheriff Maury Straub, Dr. Celestino Perez, and Ozaukee County for maintaining a custom, policy, or practice of not providing adequate healthcare and attention for inmates under their control with MRSA, and for failing to properly train Williams in providing adequate medical care, and **DISMISSING** this action.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2011.

**SO ORDERED,**

*s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**